UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FALLSVIEW AT BOONTON LLC<br>          Plaintiff<br>v.<br>BOONTON CARE CENTER LLC,<br>USHER EGERT,<br>BRIAN NATANOV,<br>INTERNAL REVENUE SERVICE<br>          Defendants | 2:26-cv-02023-MEF-MAH<br><br>Return Date: June 15, 2026<br><br>**BRIEF IN SUPPORT OF DEFENDANT<br>BRIAN NATANOV'S MOTION TO<br>DISMISS** |

Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Defendant Brian Natanov

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 5

I.      THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(1) .......... 5

II.     THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6) .......... 6

        A.     Legal Standard ..................................................................................... 6

        B.     Natanov is Not Party to the Agreement he is Alleged to have Breached ................ 7

        C.     The Complaint Does Not Adequately Plead Breach as Against Natanov ............... 8

CONCLUSION ................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................................2, 6, 7, 9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................................... 2, 9

*Brownstone Specialty Finance, Inc. v. Freedom Mortgage Corporation,*
    2017 WL 2829607 (D.N.J. June 30, 2017) ..................................................................... 1

*Chen v. Wang,*
    2024 WL 4771305 (D. N.J. Nov. 12, 2024)..............................................................2, 7, 9

*Handelsman v. Bedford Village Assoc. Ltd. P'ship,*
    213 F.3d 48 (2d Cir. 2000) ............................................................................................. 6

*Hart v. Terminex Int'l,*
    336 F.3d 541 (7th Cir. 2003) .......................................................................................... 5

*In re Ojo,*
    2021 WL 3732904 (D.N.J. Aug. 23, 2021)...................................................................... 9

*Ingris v. Borough of Caldwell,*
    2015 WL 3613499 (D.N.J. June 9, 2015) .................................................................. 9, 10

*Inter Metals Grp. v. Centrans Marine Shipping,*
    2022 WL 489404 (D.N.J. Feb. 17, 2022)......................................................................... 9

*Lincoln Benefit Life Co. v. AEI Life, LLC,*
    800 F.3d 99 (3d Cir. 2015) ............................................................................................. 5

*New Millennium Cap. Partners, III, LLC v. Juniper Group Inc.,*
    2010 WL 1257325 (S.D.N.Y. Mar. 26, 2010) ................................................................ 6

*Peace Church Risk Retention Group v. Johnson Controls Fire Prot. LP,*
    49 F.4th 866 (3d Cir. 2022)............................................................................................. 5

*Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993) ......................................................................................... 1

*Royale Luau Resort, LLC v. Kennedy Funding, Inc.,*
    2008 WL 482327 (D.N.J. Feb. 19, 2008).......................................................................... 7

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010). ................................................................................................. 6, 7

*Sciamarelli v. Semet*,
   2010 WL 1924717 (N.J. Super. Ct. App. Div. 2010) ................................................................. 7

*Shaeeran v. Blyth Shipholding S.A.*,
   2015 WL 9048979 (D.N.J. Dec. 16, 2015) ................................................................................ 9

*Shaw v. Housing Auth. Of Camden*,
   2012 WL 3283402 (D.N.J. Aug. 10, 2012) .............................................................................. 10

*Stransky v. PennyMac Holdings, LLC*,
   2019 WL 4750150 (D.N.J. Sept. 30, 2019) ................................................................................ 9

*United States Liab. Ins. Co. v. M Remodeling Corp.*,
   444 F. Supp. 3d 408 (E.D.N.Y. 2020) ....................................................................................... 6

*Zambelli Fireworks Mfg. Co. v. Wood*,
   592 F.3d 412 (3d Cir. 2010) ....................................................................................................... 5

**Statues and Rules**

Fed. R. Civ. P. 8.......................................................................................................... 5, 9, 10

Fed. R. Civ. P. 12......................................................................................................... 1, 5, 6

## INTRODUCTION

The Complaint should be dismissed pursuant to FRCP 12(b)(1) because the jurisdictional facts alleged are insufficient to establish diversity jurisdiction.

The Complaint should also be dismissed under FRCP 12(b)(6).

The sole claim against Natanov is that he breached a contract called a "Skilled Nursing Facility Management Agreement" (Chubak Decl. Exhibit 1, "Agreement"),[1] by:

(1) failing to turn over to plaintiff a refund allegedly sent to defendant Boonton Care Center LLC ("Boonton") from the IRS "for an Employee Retention Credit (ERC) for the quarterly tax period ending on September 30, 2021" (Complaint ¶22, see id. ¶40), and

(2) failing to file with the IRS "the second quarterly amended ERC" (id. ¶41) that "Boonton was responsible for filing" (id. ¶33) or alternatively "accept[ing] and retain[ing] these additional funds [as well] in breach of the terms of the Agreement" (id. ¶41).

But Natanov is not a party to the Agreement and as a non-party is not the proper defendant for any breach of contract claim.

The Complaint should also be dismissed for failure to allege a plausible claim that the Agreement was breached by Natanov and failure to satisfy notice pleading requirements.  The

---

[1] Generally, in considering a FRCP 12(b)(6) motion, a district court does not consider matters outside the pleadings.  However, "[a] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  *See also Brownstone Specialty Finance, Inc. v. Freedom Mortgage Corporation*, 2017 WL 2829607, at *1 n.2 (D.N.J. June 30, 2017) ("Therefore, the Court may properly consider the Services Agreement and its Exhibits [on a motion to dismiss] because Plaintiff's claims are clearly based on those documents").

Complaint alleges that any of several different defendants (Boonton itself, Egert, and/or Natanov) might be responsible for the alleged breaches: "Either Egert received and cashed the check, Natanov received and cashed the check, or the check was not cashed and the proceeds are being held by the IRS" (id. ¶31); "the Boonton defendants either did not file the second quarterly amended ERC, or accepted and retained those additional funds, in breach of the terms of the Agreement" (id. ¶41).

However, plausibility requires factual allegations "that allows the court to draw the reasonable inference that <u>the defendant</u> is liable for the misconduct alleged".  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (emphasis added).  It is not satisfied by allegations that at least one of several defendants must be liable. *E.g. Chen v. Wang*, 2024 WL 4771305, at *12 n.14 (D. N.J. Nov. 12, 2024) ("Courts dismiss claims alleged indiscriminately against multiple defendants without factual allegations warranting an inference that each could be liable").

Notice pleading requirements likewise prohibit lumping all defendants together without setting forth the unlawful conduct each is alleged to have done. But that is exactly what plaintiff ("Fallsview") has done here.

### BACKGROUND

The Complaint alleges:

Fallsview and Boonton are LLCs with a New Jersey and New York address respectively. Their members are not identified, nor is the citizenship of their members alleged.  (Complaint ¶1-2.)

Boonton "was the licensed operator of … a skilled nursing facility".  (Id. ¶11.)

Natanov is a partner, member and/or employee of Bonton.  (Id. ¶10.)

In 2021, "Fallsview and Boonton entered into a Skilled Nursing Facility Management Agreement." (Id. ¶12.)

"Natanov was the signatory to the Agreement on behalf of Boonton." (Id. ¶13.) He is not alleged to be a party to the Agreement. The Agreement itself confirms he signed only in a representative capacity on behalf of Boonton. Chubak Decl. Exh. 1.

"Natanov was also the individual who signed off on the quarterly amended payroll returns filed on behalf of Boonton as they relate to the operation of the Facility." (Complaint ¶13.)

"The Agreement provided that Fallsview would provide management services for the Facility pursuant to the terms … of the Agreement." (Complaint ¶14.)

"Relevant to this action, Section 7 provides that any funds received post-transition relating to the facility, even if accrued pre-transition, were to be received by Fallsview and applied to the operation of the facility." (Id. ¶17.)

New Jersey law governs "all matters arising under or pertaining to this Agreement". (Agreement § 19.)

"In January 2023, long after the transition occurred, Fallsview was provided with notice at the Facility that a refund from the IRS was owed in the amount of $422,863.20." (Complaint ¶19.)

"Based on the terms of the Agreement, the IRS funds were owed to Fallsview." (Id. ¶20.)

"The IRS Notice was addressed to Boonton and Egert [i.e. not to Natanov] and sent to the Facility's address." (Id. ¶21.)

"The IRS funds were for an Employee Retention Credit (ERC) for the quarterly tax period ending on September 30, 2021." (Id. ¶22.)

"On October 25, 2021, a representative for Fallsview reached out to Natanov to inquire as to whether the amended return had been signed. Natanov responded the same day stating that he

3

amended return had been signed and filed." (Id. ¶23.) No claim is made that this statement by Natanov was untrue.

"On August 4, 2022, Natanov contacted Fallsview to inquire as to if the IRS funds had been received at the facility, and Fallsview confirmed that they had not." (Id. ¶24.)

"Fallsview contacted the IRS to inquire as to the status of the check when it was not timely received and was advised that the refund check would be mailed." (Id. ¶25.)

Subsequently, "Fallsview filed a Form 3911, Taxpayer Statement Regarding Refund, stating that it still had not received a check and provided the correct mailing and banking information for the IRS funds." (Id. ¶26.)

In response, "the IRS advised that it re-issued the check and subsequently advised that the check had been cleared." (Id. ¶27.)

"Fallsview never received either check for the IRS funds." (Id. ¶28.)

"Fallsview later learned that the first check was sent to Egert's address in Brooklyn." (Id. ¶29.)

"Egert advised Fallsview that he did not receive, deposit or cash either check." (Id. ¶30.)

"Either Egert received and cashed the check, Natanov received and cashed the check, or the check was not cashed and the proceeds are being held by the IRS. (Id. ¶31.)

"Additionally, Boonton was responsible for filing a second amended quarterly ERC document with the IRS, which would have resulted in additional funds being due and owed to Fallsview under the terms of the Agreement." (Id. ¶33.)

"Fallsview has not received any funds from the Boonton defendants or the IRS for the second quarterly ERC." (Id. ¶34.)

"Either Boonton did not file the amended return as required, Egert received and cashed the check, Natanov received and cashed the check, or the check was not cashed, and the proceeds are being held by the IRS." (Id. ¶35.)

**ARGUMENT**

**I.     THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(1)**

"Federal courts are courts of limited jurisdiction, and … must therefore be certain that there is a basis for [its] authority to hear each suit before proceeding to the merits" of the case. *Peace Church Risk Retention Group v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 869-70 (3d Cir. 2022) (citing *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010)).

FRCP 8(a) requires the Complaint to provide "a short and plain statement of the grounds for the court's jurisdiction."

Here, the sole asserted basis for subject matter jurisdiction is diversity. (Complaint ¶6.) "To meet the strictures of the diversity statute, complete diversity is required, meaning that at the time the complaint is filed, no party can be a citizen of the same state as any opposing party." *Peace Church*, 49 F.4th at 870 (citing *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 & n.9 (3d Cir. 2015)).

"[T]he citizenship of an LLC is determined by the citizenship of its members. And as with partnerships, where an LLC has, as one of its members, another LLC, 'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC." *Zambelli Fireworks*, 592 F.3d at 420 (quoting *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)).

Therefore, "[i]n pleading an LLC's citizenship, the identity and citizenship of each member has to be specifically alleged [meaning] a [party] must allege the identity and citizenship of [all of an LLC's] members, proceeding up the chain of ownership until it has alleged the identity and

5

citizenship of every individual and corporation with a direct or indirect interest in the LLC." *United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020) (collecting circuit level authority and dismissing for failure to adequately plead diversity of an LLC). *See also New Millennium Cap. Partners, III, LLC v. Juniper Group Inc.*, 2010 WL 1257325, at *1 (S.D.N.Y. Mar. 26, 2010) (citing *Handelsman v. Bedford Village Assoc. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000)) ("A complaint premised upon diversity of citizenship must allege the citizenship of natural persons who are members of a limited liability company and the place of incorporation and principal place of business of any corporate entities who are members of the limited liability company").

The Complaint here does not do that. Instead, it alleges only the addresses of the LLC plaintiff and LLC defendant, which have no bearing on citizenship.[2]

## II.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6)[3]

### A.   Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted). The plausibility determination in turn entails a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*). Second, the court should identify allegations that, "'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id*. at 131. Finally,

---

[2] Separately, the Complaint does not allege the "citizenship" of the IRS, and it is unclear that the IRS is a "citizen" of any state for diversity-jurisdiction purposes.

[3] The dismissal for failure to plead diversity jurisdiction might well be with leave to amend, given that relevant information is missing from the current Complaint. We respectfully suggest that such amendment would be futile given that one key substantive problem with the contract claim – that Natanov is not a party to the contract in question – cannot be cured by amendment and that for that reason the Court should reach the 12(b)(6) issues now.

6

"'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id* at 130.

"The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id*.

**B.      Natanov is Not Party to the Agreement he is Alleged to have Breached**

The Complaint asserts a single claim against Natanov, for breach of contract. Its stated basis is that "[t]he Agreement is a contract by and between Fallsview, on the one hand, and the Boonton defendants [defined as Boonton, Egert and Natanov], on the other" (Complaint ¶38), even though Fallsview previously alleged (id. ¶12) that the agreement is between "Fallsview and Boonton" only.

"Under New Jersey law [which governs under Agreement § 19], a corporate officer 'cannot be liable for breach of contract … where he simply signed on behalf of the corporate entity.'" *Chen*, 2024 WL 4771305, at \*13 (quoting *Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, 2008 WL 482327, at \*9 (D.N.J. Feb. 19, 2008) (dismissing contract claim against individual defendant on ground that the complaint did not allege intention to be personally bound). *See also Sciamarelli v. Semet*, 2010 WL 1924717, at \*4 (N.J. Super. Ct. App. Div. 2010) ("It is hornbook law that an individual does not become personally liable on a contract when signing as an officer of a corporation").

Natanov is not a party to the Agreement. Its signature page identifies only Boonton and Fallsview as parties. Natanov is not alleged to have acted outside his corporate capacity in signing.

7

Nor did he sign a second time in his individual capacity to guarantee the LLC's obligations, as is common in small business contracts.  He therefore cannot be liable.

### C.      The Complaint Does Not Adequately Plead Breach

Fallsview alleges (Complaint ¶17) that "Section 7 [of the Agreement] provides that any funds received post-transition relating to the facility, even if accrued pre-transition, were to be received by Fallsview and applied to the operation of the facility."  But Section 7 says nothing of the kind but gives Boonton only more narrowly and precisely-specified obligations while, as already noted, giving Natanov no obligations at all.

Perhaps Fallsview is relying on Agreement § 7(c) which provides:

> The Company shall, and authorizes the Manager on its behalf to, apply for and seek all additional Covid or other stimulus funds, grants and advances as may be available in respect of the operations of the Facility and, upon receipt thereof, the same shall be delivered to the Manager to be applied to the payment of Facility Expenses arising during the Post-Transition Period [i.e. after October 31, 2021].

But an alleged tax refund due to Boonton from the IRS, whether based on ERC credits or otherwise, does not on its face fall within "stimulus funds, grants and advances," so no breach is alleged even by Boonton.

Separately, the Complaint also does not allege Natanov cashed the first check sent to Egert (Complaint ¶29) or that he cashed any re-issued check or deposited it in his own account (id. ¶27). Rather, it alleges "the Boonton defendants" as a group "accepted and retained the IRS funds in breach of the terms of the Agreement" (id. ¶40) and "the Boonton defendants" as a group "either did not file the second quarterly amended ERC, or accepted and retained these additional funds, in breach of the terms of the agreement" (id. ¶41).

Not only do these conclusory accusations do nothing to avoid the problem that no defendant other than Boonton itself had any contractual obligations to Fallsview, they not satisfy

8

plausibility requirements as to Natanov.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that <u>the defendant</u> is liable for the misconduct alleged") (emphasis added).  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Therefore, "[c]ourts dismiss claims alleged indiscriminately against multiple defendants without factual allegations warranting an inference that each could be liable."  *Chen*, 2024 WL 4771305, at *12 n.14.  *See also Shaeeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (dismissing complaint on plausibility grounds because it "fails to separate out the liability for each defendant"). Stated differently, it is insufficient to plead that at least one defendant must be liable, as Fallsview has done here.  (Complaint ¶¶40-42, alleging breach by "the Boonton defendants".)

Failing to separate out liability of each defendant also does not satisfy notice pleading requirements.  *E.g. Inter Metals Grp. v. Centrans Marine Shipping*, 2022 WL 489404, at *7 (D.N.J. Feb. 17, 2022) ("both Maverick and C.J. fail to satisfy the basic pleading requirement of providing adequate notice to each Co-Defendant of the specific claims against it. Their crossclaims are brought collectively against Centrans and the other Co-Defendants and fail to specify the personal involvement of any Co-Defendant."); *In re Ojo*, 2021 WL 3732904, at *2 (D.N.J. Aug. 23, 2021) ("With regard to Rule 8, the primary flaw in the Complaints is that they often allege that the Defendants acted in unison, without delineating the actions of each Defendant or explaining under what circumstances they acted or failed to act"); *Stransky v. PennyMac Holdings, LLC*, 2019 WL 4750150, at *6 (D.N.J. Sept. 30, 2019) ("Courts in this district have held 'group pleading' does not satisfy Rule 8 because it does not place the defendants on notice of the claims against them"); *Ingris v. Borough of Caldwell*, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("to the extent Plaintiff seeks to lump several defendants together without setting forth what each particular

9

defendant is alleged to have done, he has engaged in impermissibly vague group pleading"); *Shaw v. Housing Auth. Of Camden*, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) ("Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants").

Here, the group pleading makes it impossible to ascertain which defendant is supposedly responsible for conduct resulting in the alleged breaches. Alleging that either A, B or C (but only one of the three) engaged in wrongful conduct provides even less notice than the typical group pleading where a plaintiff alleges that A, B and C did so together. Again, the key allegation here is that (Complaint ¶31) "Either Egert received and cashed the check, Natanov received and cashed the check, or the check was not cashed and the proceeds are being held by the IRS." This does not give rise to a "plausible" inference that Natanov did anything, separate and apart from the problem that anything Natanov did in his capacity as a member or officer or employee of Boonton would only give rise at most to contractual liability for Boonton rather than Natanov individually. [4]

Even worse, not only does Fallsview make no allegation as to which of the three scenarios it outlined is actually true (with the other two by definition not being true), the insinuation that it must have been one of those three scenarios is itself merely a bare conclusion entitled to no weight at all. It is obvious that there are other possibilities, such as the check having been received (perhaps as a result of a misdelivery by the post office, perhaps otherwise) and then cashed by some other unnamed person. In a worst-case scenario, this Court has previously accepted the guilty plea of a former postal employee for crimes committed as part of a scheme to steal tax refund checks from the mail before they were delivered to their addressees. https://www.justice.gov/usao-

---

[4] If the check was made out to Boonton and deposited by anyone (Egert, Natanov or someone else) acting on Boonton's behalf in a Boonton bank account, there is still no breach. The breach, if any, would be Boonton's subsequent failure to then pay the funds over to Fallsview.

nj/pr/former-us-postal-letter-carrier-admits-role-stealing-tax-refund-checks-part-scam   Fallsview

pleads no facts making such a scenario any less "plausible" than its speculation that a check might

have been received and cashed by Natanov.

### CONCLUSION

The motion should be granted, and dismissal should be with prejudice as Natanov not being

a party to the Agreement cannot be cured via amendment.

Dated: New York, NY
       May 21, 2026

                                        Amini LLC

                                        /s/ Jeffrey Chubak
                                        Jeffrey Chubak
                                        131 West 35th Street
                                        12th Floor
                                        New York, NY 1001
                                        (212) 490-4700
                                        jchubak@aminillc.com
                                        Attorneys for Defendant Brian Natanov

11