**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Fallsview at Boonton LLC, | : | Civil No.: 2:26-cv-02023 |
| Plaintiff, | : | |
| v. | : | |
| Boonton Care Center LLC, Usher Egert, Brian Natanov, and Internal Revenue Service, | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BRIAN NATANOV'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)**

**I.    INTRODUCTION**

Defendant Brian Natanov's ("Defendant" or "Natanov") Motion to Dismiss is a premature attempt to escape liability through technical pleading challenges that can be cured by amendment, if needed, or that mischaracterize the allegations made by Plaintiff Fallsview at Boonton LLC ("Plaintiff" or "Fallsview") in its Complaint. Natanov also mischaracterizes the terms of the governing Agreement. Plaintiff has alleged sufficient facts to support its claims against Natanov, and his Motion should be denied. In the alternative, Plaintiff should be permitted to amend its Complaint if the Court determines that Natanov's Motion should otherwise be granted.

**II.    FACTUAL BACKGROUND**

As stated in the Complaint, Fallsview and Boonton Care Center LLC ("Boonton") are limited liability companies with addresses in New Jersey and New York, respectively, and Usher

Egert ("Egert") and Natanov are individuals with addresses in New York.[1] Egert and Natanov are both partners, members, and/or employees of Boonton.[2]

Natanov signed a Skilled Nursing Facility Management Agreement (the "Agreement") as a member of Boonton.[3] The Agreement provides that Fallsview would provide management services for the Facility pursuant to the terms and provisions of the Agreement, with the understanding that Fallsview would permanently take over control and management of the Facility.[4] The Agreement further provides, in relevant part, that any funds received post-transition relating to the facility, even if accrued pre-transition, were to be received by Fallsview and applied to the operation of the facility.[5]

In January 2023, long after the transition occurred, Fallsview was provided with notice at the Facility that a refund from the IRS was owed in the amount of $422,863.20 for an Employee Retention Credit (ERC) for the tax period ending on September 20, 2021.[6] Based on the terms of the Agreement, these funds were owed to Fallsview.[7] Since Natanov was the individual responsible for signing off on the quarterly amended payroll returns that were filed on behalf of Boonton, on October 25, 2021, a representative for Fallsview reached out to Natanov to inquire as to whether the amended return had been signed.[8] Natanov responded the same day stating that the amended return had been signed and filed.[9]

On August 4, 2022, Natanov contacted Fallsview to inquire whether the refund had been

---

[1] See Plaintiff's Complaint at ¶¶ 1-4.
[2] Id. at ¶ 10.
[3] Id. at ¶¶ 12, 13.
[4] Id. at ¶¶ 14, 15.
[5] Id. at ¶ 17.
[6] Id. at ¶¶ 19, 22.
[7] Id. at ¶ 20.
[8] Id. at ¶¶ 13, 23.
[9] Id. at ¶ 23.

received at the facility, and Fallsview confirmed that it had not.[10] Fallsview thereafter contacted the IRS to inquire as to the status of the check, and eventually was told that the check had been issued, mailed, and cleared.[11] Fallsview never received the check, nor the funds.[12] Since Fallsview never received the check nor the funds, either Egert received and cashed the check, Natanov received and cashed the check, or the check was not cashed and the proceeds are being held by the IRS.[13]

Additionally, Boonton was responsible for filing a second amended quarterly ERC document with the IRS, which would have resulted in additional funds being due and owed to Fallsview under the terms of the Agreement.[14] Fallsview has not received any funds from the Boonton defendants or the IRS for the second quarterly ERC.[15] Either Boonton did not file the amended return as required, Egert received and cashed the check, Natanov received and cashed the check, or the check was not cashed and the proceeds are being held by the IRS.[16] Based on all of these facts, Plaintiff filed its Complaint alleging Breach of Contract and Conversion claims. Natanov then filed a Motion to Dismiss.

## III.    LEGAL STANDARD AND ARGUMENT

### A.    Motion to Dismiss Standard

Rule 12(b)(1) provides that a claim may be dismissed for lack of jurisdiction.[17] A motion to dismiss based on the Eleventh Amendment is properly considered a motion to dismiss based on subject matter jurisdiction.[18] Such a claim can be either factual or facial, and when it is facial, like

---

[10] Id. at ¶ 24.
[11] Id. at ¶¶ 25, 27.
[12] Id. at ¶ 28.
[13] Id. at ¶ 31.
[14] Id. at ¶ 33.
[15] Id. at ¶ 34.
[16] Id. at ¶ 35.
[17] See F.R.C.P. 12(b)(1).
[18] Blanciak v. Allegheny Ludlum Corporation, 77 F.3d 690 at fn. 2 (3d Cir. 1996).

in a Rule 12(b)(6) motion, all allegations in the complaint must be taken as true.[19] As Natanov does not dispute the factual allegations of the Complaint in his Motion and rather bases his argument specifically on the relevant law, his Motion must be treated as a facial attack, and therefore, all of Fallsview's allegations must be taken as true.

Defendant also moves for dismissal under F.R.C.P. 12(b)(6). It is well-settled that in considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim for which relief can be granted, a court must accept as true all well-pleaded allegations and view them in a light most favorable to the non-moving party. A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted."[20] As a result, in reviewing a motion to dismiss, the question is whether, when viewed, "in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief."[21] Parties cannot rely solely upon conclusory allegations that merely set forth the basic elements of a cause of action.[22] Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.[23] Therefore, a motion to dismiss for failure to state a claim admits the facts in the complaint, but challenges plaintiff's rights to relief based upon those facts.[24]

B.   **Plaintiff's Complaint Should Not Be Dismissed Pursuant to FRCP 12(b)(1) as Any Claimed Deficiencies In Pleading Diversity Can be Cured**

Natanov's first argument is that Plaintiff's Complaint should be dismissed pursuant to FRCP 12(b)(1) for not adequately pleading diversity. Natanov argues that, because the

---

[19] Gould Electronics, Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).
[20] Whiddon v. Chase Home Fin., LLC, 666 F. Supp. 2d 681, 686 (E.D. Tex. 2009) *citing Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir.2003).
[21] Id.
[22] Bell Atlantic Corp v. Twombly, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1955 (2009).
[23] See also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).
[24] Id.

citizenship of an LLC is determined by the citizenship of its members, a plaintiff must allege the citizenship of each of its members in order to survive a Motion to Dismiss.[25] However, this is not the standard in New Jersey or in the Third Circuit.[26] New Jersey law is clear that:

> [A] plaintiff need not affirmatively allege the citizenship of each member of an unincorporated association in order to get past the pleading stage. Instead, if the plaintiff is able to allege in good faith, after a reasonable attempt to determine the identities of the members of the association, that it is diverse from all of those members, its complaint will survive a facial challenge to subject-matter jurisdiction. If the defendant thereafter mounts a factual challenge, the plaintiff is entitled to limited discovery for the purpose of establishing that complete diversity exists.[27]

In this case, Plaintiff has conducted a reasonable search to determine the members of the parties, and, based on that search, believes that there is diversity of jurisdiction. The allegations in the Complaint that support diversity include (1) that Natanov and Usher Egert ("Egert"), who are both Partners, Members, and/or Employees of Boonton, are citizens of the state of New York, (2) that Plaintiff is located in New Jersey, and (3) that Plaintiff and all Defendants are citizens of different states.[28]

Natanov concedes that the appropriate remedy is not dismissal with prejudice, as he is asking, but dismissal with leave to amend the Complaint. Thus, if the Court were to find that Plaintiff's allegations are insufficient to invoke diversity jurisdiction, then the appropriate remedy would be to dismiss with leave to amend.[29]

---

[25] See Natanov's Brief in Support of his Motion to Dismiss at pgs. 5-6.

[26] See Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99 (3d Cir. 2015) and Transamerica Life Ins. Co. v. Daibes Gas Holdings Atlanta, L.L.C., 2018 WL 11374586, at fn 3 (D.N.J. July 11, 2018). Natanov cites to no authority in the Third Circuit

[27] Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 102 (3d Cir. 2015).

[28] See Plaintiff's Complaint at ¶¶ 1-6, 10.

[29] Plaintiff notes that it can also amend its Complaint to include original jurisdiction due to the presence of the Internal Revenue Service and/or the United States of America as a defendant, which was an inadvertent oversight on initial filing.

### C.    Plaintiff's Complaint Should Not Be Dismissed As Plaintiff Has Adequately Alleged Its Claim For Breach Of Contract Against Natanov

#### 1.    Natanov Can Be Held Liable For Breach Of Contract Even If He Did Not Make Any Personal Guarantees Under The Agreement

Natanov argues that he cannot be liable for breach of contract because, under New Jersey Law, "a corporate officer 'cannot be liable for breach of contract… where he simply signed on behalf of the corporate entity.'"[30] What Natanov ignores is that Plaintiff does not allege that he is liable for breach solely because he signed the contract. He is liable because he personally engaged in the acts upon which the claims are based.

Plaintiff alleges that Natanov is a partner, member, and/or employee of Boonton, that he signed the Agreement on behalf of Boonton, that he signed the quarterly amended payroll returns filed on behalf of Boonton, that he personally confirmed that he filed the documents, and that he personally followed up with Fallsview to inquire as to the status of the IRS funds that should have been returned.[31] Plaintiff further alleges that Fallsview never received the check, despite the IRS advising that it re-issued the check and advised that the check had been cleared.[32] Fallsview has to assume, therefore, that either Egert received and cashed the check, Natanov himself received and cashed the check, or the check was not cashed and the proceeds are being held by the IRS.[33]

Plaintiff also alleges that a second amended quarterly filing should have been completed and filed by Boonton, which Natanov was responsible for and which would have meant additional funds would be refunded to Fallsview. Fallsview similarly did not receive this

---

[30] See Natanov's Brief at page 7, citing Chen v. Wang, 2024 WL 4771305, at *13, quoting Royale Luau Resort, LLC v. Kennedy Funding, Inc., 2008 WL 482327, at *9 (D.N.J. Feb. 19, 2008).
[31] See Plaintiff's Complaint at ¶¶ 10, 13, 23, 24.
[32] Id. at ¶¶ 27, 28.
[33] Id. at ¶ 31.

6

money.[34] Either Boonton did not file the amended return as required, Egert received and cashed the check, Natanov received and cashed the check, or the check was not cashed, and the proceeds are being held by the IRS.[35]

### 2. Plaintiff Has Alleged Facts Sufficient To Support Its Breach Of Contract Claim Against Natanov, And The Complaint Is Not A Group Pleading

Natanov next argues that Plaintiff fails to even allege a breach of the Agreement, but Natanov's argument is based on a narrow interpretation of the Agreement that is both incorrect and inappropriate at this stage of the litigation. Natanov argues that Section 7 is narrow and precisely specifies the obligations, and that Employee Retention Credits (ERC) are not "Covid or other stimulus funds, grants and advances." This argument is disingenuous. The IRS itself describes ERC as "a refundable tax credit for certain eligible businesses and tax-exempt organizations that had employees and were affected during the COVID-19 pandemic."[36] Thus, Natanov's argument that ERC does not fall within the purview of Section 7 is patently incorrect.

Natanov's final argument for dismissal is based on an allegation that Plaintiff "fails to separate out liability of each defendant" and is a group pleading, but at the same time, admits that Plaintiff alleges specific facts against each defendant.[37] As Natanov admits, Plaintiff alleges that "[e]ither Egert received and cashed the check, Natanov received and cashed the check, or the check was not cashed and the proceeds are being held by the IRS."[38] This is not an impermissible group pleading, as it specifically states what each defendant is accused of doing. Additionally, at this stage of the litigation, Plaintiff does not have to prove which of these actually happened.

---

[34] Id. at ¶¶ 33-34.
[35] Id. at ¶ 35.
[36] See https://www.irs.gov/coronavirus/employee-retention-credit (last accessed June 18, 2026).
[37] See Natanov's Motion at page 10.
[38] See Plaintiff's Complaint at ¶ 31.

7

Making the allegation is sufficient. F.R.C.P. 8(d)(2) specifically allows for alternative pleadings, providing:

> (d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.
>
> …
>
> (2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.[39]

This is exactly what Plaintiff has done. It has alleged that one of these three things is true, and discovery is the device for Plaintiff to explore this. The claim against Natanov cannot be dismissed at this stage of the litigation simply because Plaintiff pled alternative theories. In that vein, Natanov's argument that a postal worker could have stolen the check and cashed it themselves is speculative and improper on a 12(b)(6) Motion – a motion to dismiss for failure to state a claim admits the facts in the complaint, but challenges plaintiff's rights to relief based upon those facts.[40] Natanov cannot avoid liability by simply offering another possible explanation of what might have happened, rather, the facts that are alleged must not form the basis for a claim in the first place.

### 3. Plaintiff Should, At The Very Least, Be Granted Leave To Amend

If the Court is inclined to grant Natanov's Motion, which it should not, then the Motion should at the very least be granted without prejudice, and with leave for Plaintiff to amend its Complaint. Plaintiff believes all issues raised by Natanov can be cured, if the Court believes it is necessary to do so. First, diversity jurisdiction can be cured based on Plaintiff's good-faith research and belief that each entity is a one Member LLC with the Members of the corporate

---

[39] F.R.C.P. 8(d)(2).
[40] Id.

defendants residing in New York, and the Plaintiff's Members residing in New Jersey. Plaintiff can also add its inadvertently missed claim of original jurisdiction due to the fact that the IRS and/or the United States of America is a party.

Additionally, if the Court finds that there are any substantive defects, those can similarly be cured. Plaintiff can add additional facts to support its breach of contract claim, and can include tort claims, such as including Natanov in the conversion count and/or adding unjust enrichment, both of which are supported by the factual allegations of the Complaint.

## IV.  CONCLUSION

Based on all of the above, Natanov's Motion should be denied, or, in the alternative, that Plaintiff be granted leave to amend its Complaint.

**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY**

Dated: June 22, 2026

*/s/ Jeffrey P. Resnick*
Jeffrey P. Resnick, Esquire
Laura C. Laszewski, Esquire
East Gate Corporate Center
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: (856) 662-0700
Facsimile: (856) 661-2090
Email: jresnick@shermansilverstein.com
Email: llaszewski@sermansilverstein.com
Attorneys for Plaintiff Fallsview At
Boonton LLC